**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| SHERRY C. TARANTO, ROBERT C. BRACAMOTES, JR., GAIL L. BRACAMOTES, KAY C. SABADIE, KIM C. DASSEY, TAB J. COLEMAN, WILLIAM S. COLEMAN, JR., TARA C. BRIGNAC, AND DEAN J. COLEMAN,<br><br>*Plaintiffs*,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>*Defendant*. | No.:  1:08-CV-1356-LG-RHW |

**STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF
<u>PLAINTIFFS' EXPERT HAROLD PUDERER, JR.</u>**

# TABLE OF CONTENTS

**PAGE**

I. Preliminary Statement ................................................................................................1

II. Mr. Puderer's Opinions and Initial Draft Estimate Are Irrelevant and Would Introduce Substantial Unfair Prejudice, Confuse the Issues, and Mislead the Jury ............2

III. Plaintiffs Cannot Meet Their Burden To Show That Mr. Puderer's Opinions Are Admissible ...................................................................................................................5

    A. Threshold Scrutiny of Expert Testimony ..................................................5

    B. Mr. Puderer's Vague, Conclusory, and Deficient Report Must Be Stricken ...........7

    C. Mr. Puderer's Opinions and Estimate Are Unreliable ............................10

IV. Conclusion ................................................................................................................11

I.  **PRELIMINARY STATEMENT**

State Farm Fire and Casualty Company ("State Farm") respectfully submits this memorandum in support of its motion, pursuant to Federal Rules of Evidence 401, 402, 403, and 702, and Federal Rules of Civil Procedure 26 and 37, to strike the report and exclude the testimony of Plaintiffs' expert witness, Harold Puderer, Jr.  Plaintiffs have designated Mr. Puderer to testify regarding the cost to rebuild the damaged property.  *See* Pls.' Expert Designation [43] at 2.  In support of Mr. Puderer's expert testimony, Plaintiffs have submitted a deficient report, which is designated as an "initial draft estimate."  Ex. A, Estimate of Harold Puderer, Jr., dated Oct. 20, 2009.

As the proponent of Mr. Puderer's expert evidence, Plaintiffs bear the burden of showing that it is admissible.  *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002); *Tanner v. Westbrook*, 174 F.3d 542, 547 (5th Cir. 1999) (superseded on other grounds); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n.10 (1993).  State Farm does ***not*** bear the burden of demonstrating its inadmissibility.  *See Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 99, 102 (D. Conn. 2006); *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 534 (W.D. Pa. 2003).  Plaintiffs cannot meet their burden here.  In fact, as shown below, Mr. Puderer's conclusory, unfounded, and unreliable report and opinions do not pass muster under the Federal Rules and should be excluded.

First, Mr. Puderer used 2009 prices in his replacement cost estimate.  Yet, the plain and unambiguous terms of the subject homeowners policy limit coverage to the actual cash value at the time of the loss, replacement cost value at the time of the loss, or the amount actually spent in repairing or replacing the damaged property.  Mr. Puderer uses none of these values.  As a result, his proposed testimony is irrelevant, unreliable, unhelpful to the fact finder, and inadmissible.

Second, Mr. Puderer's "initial draft estimate" is deficient because it fails to comply with the requirements of Federal Rule of Civil Procedure 26(a)(2)(B).  Plaintiffs and Mr. Puderer proffer a

"sketchy and vague" report, which wholly fails to describe in any meaningful manner the basis and reasons for the items that lie at the heart of Mr. Puderer's opinions. For instance, Mr. Puderer's "initial draft estimate" fails to explain how he generated his price figure or to disclose whether Mr. Puderer knew anything about the construction or structure of the property at the time he prepared his such estimate.

Third, Mr. Puderer's opinions and testimony are inadmissible because Plaintiffs cannot meet their burden to show that Mr. Puderer selected a reliable methodology and reliably applied that methodology to the facts of this case. Mr. Puderer employs wide discretion in crafting the figure contained in his estimate. Yet, in doing so, he discloses *no* methodology or sound reasoning. Furthermore, Mr. Puderer's opinions are unreliable because the estimate which forms the basis of his opinions is designated as an "initial draft estimate," suggesting its uncertainty, and lacks sufficient information regarding the destroyed property. In sum, Mr. Puderer's unsupported, conclusory assertion regarding the cost to replace the destroyed property amounts to *ipse dixit* and is therefore inadmissible.

Each of the foregoing points, standing alone, is sufficient to bar Mr. Puderer's testimony. Their collective weight only adds further support to that conclusion. Accordingly, this Court should grant State Farm's motion and exclude Mr. Puderer's opinions and proposed testimony.

II. **MR. PUDERER'S OPINIONS AND INITIAL DRAFT ESTIMATE ARE IRRELEVANT AND WOULD INTRODUCE SUBSTANTIAL UNFAIR PREJUDICE, CONFUSE THE ISSUES, AND MISLEAD THE JURY**

As an initial matter, Mr. Puderer's "initial draft estimate" and opinions should be excluded because they are irrelevant. *See* Fed. R. Evid. 401-402. Mr. Puderer opines as to the cost to repair or replace the damage to the property sustained during Hurricane Katrina. *See* Ex. A; [43] at 2. As Mr. Puderer admits, his estimate of the cost to rebuild the property is based on construction prices at the time Mr. Puderer wrote his report. *See* Ex. A. Yet, the subject homeowners policy does not pay the theoretical present value of repairs to damaged property. Rather, the homeowners policy provides:

2

1.   **A1 – Replacement Cost Loss Settlement –Similar Construction.**

a.   We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I – COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

   (1)   until actual repair or replacement is completed, we will pay only the *actual cash value at the time of the loss* of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

   (2)   when the repair or replacement is actually completed, we will pay the covered additional amount *you actually and necessarily spend* to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

   (3)   to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed . . . .

Ex. B, Homeowners Policy, at 11. Thus, as the controlling language of the policy makes clear, the only cost numbers that are relevant are (i) the actual cash value of damaged property at the time of the loss in 2005, immediately after Katrina, (ii) the replacement cost of the damaged property immediately after Katrina, and (iii) the amount actually spent to repair or replace the damaged property. Mr. Puderer's estimate, however, is based on none of these figures but rather on figures from "today's prices." Ex. A at 1. Mr. Puderer's "initial draft estimate" is dated October 20, 2009. *See id.* The damage to the property occurred in August 2005 – over four years before Mr. Puderer prepared his "initial draft estimate." Accordingly, Mr. Puderer's "initial draft estimate" and opinions about the replacement cost in 2009 do not reflect the value of the damaged property at the time of the loss and are irrelevant, unhelpful to the fact finder, and inadmissible. *See* Fed. R. Evid. 401-402.

Courts "are bound to enforce contract language as written and give it its plain and ordinary meaning." *Miss. Farm Bureau Cas. Ins. Co. v. Britt*, 826 So. 2d 1261, 1266 (Miss. 2002) (en banc). "Where the contract is unambiguous, the 'parties are bound by the language of the instrument.'" *Delta*

3

*Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 404 (Miss. 1997) (quoting *Cherry v. Anthony, Gibbs, Sage*, 501 So. 2d 416, 419 (Miss. 1987)); *see also Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 353 (5th Cir. 2007). Applying the controlling policy terms here renders Mr. Puderer's opinion irrelevant and inadmissible.

      Further, even if the price on Mr. Puderer's "initial draft estimate" did derive from the proper time period – which it does not – it would still be an incorrect measure of the value of the covered property. Under the applicable homeowners policy, replacement costs are not available "until actual repair or replacement is completed." Ex. B at 11. Plaintiffs have not repaired or rebuilt the property. *See* Ex. C, S. Taranto Dep. 29:22-24; Pls.' Resp. to Def.'s Interrog. #9; Pls.' Resp. to Def.'s Req. for Produc. of Docs. #2. Thus, they would only be entitled to its actual cash value. *See Lebon v. State Farm Fire & Cas. Co.*, 2010 WL 1064705, at *2 (S.D. Miss. Mar. 18, 2009) (Senter, J.) ("[U]nder Plaintiffs' contract with Defendant actual repair or replacement must be completed before replacement cost benefits become available. . . . Therefore, until the structures are actually replaced, Plaintiffs are limited to the actual cash value of their loss (replacement cost less depreciation, as defined by their own expert), taking into account other insurance benefits received and the limits of their homeowners policy."); *Fowler v. State Farm Fire & Cas. Co.*, 2008 WL 3050417, at *8 (S.D. Miss. July 25, 2008) (Ozerden, J.) ("It is clear from the face of their homeowners' insurance policy that Plaintiffs may only recover replacement cost, 'when the repair or replacement is actually completed.'"). But Mr. Puderer's estimate does not account for the actual cash value of the damaged property, only its replacement cost value. Thus, under the circumstances of this case, his "initial draft estimate" is irrelevant.

      Mr. Puderer's opinions and estimate are also inadmissible because they would inject substantial undue prejudice into this case, mislead the jury, and confuse the issues. *See* Fed. R. Evid. 403. As noted above, under the subject homeowners policy, the replacement cost value of the damaged property is irrelevant until the repairs are actually completed, and even when the repairs are completed Plaintiffs

4

are only entitled to the amount actually spent on the repairs.  Yet, if permitted to hear Mr. Puderer's opinions, the jury may incorrectly conclude that Plaintiffs are entitled to the amounts in his "initial draft estimate" instead of the amounts permitted by the policy.  Allowing Mr. Puderer to testify regarding replacement cost values would mislead the jury and confuse the issues.  Therefore, under Fed. R. Evid. 403, this Court should exclude the opinions and proposed testimony of Mr. Puderer.

### III.     PLAINTIFFS CANNOT MEET THEIR BURDEN TO SHOW THAT MR. PUDERER'S OPINIONS ARE ADMISSIBLE

#### A.     Threshold Scrutiny of Expert Testimony

In determining the admissibility of Mr. Puderer's proposed testimony, this Court must make a threshold assessment of "whether the reasoning or methodology underlying the [expert] testimony is scientifically valid and of whether that reasoning and methodology properly can be applied to the facts in issue."  *Daubert*, 509 U.S. at 592-93.  Throughout the evaluation, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Id.* at 589.  These "exacting standards of reliability," *Weisgram v. Marley Co.*, 528 U.S. 440, 442 (2000), require far "more than subjective belief or unsupported speculation."  *Daubert*, 509 U.S. at 590.  Yet, Mr. Puderer has neither relied on scientific data applicable to the facts in this case, nor reliably applied any methodology.

Federal Rule of Evidence 702 requires a sound basis and a sound methodology, properly applied to the facts of the case, before an opinion can be admitted into evidence.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, *if* (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, *and* (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (emphasis added).  Thus, courts must exclude expert evidence that is not "based on sufficient facts or data," that is not "the product of reliable principles and methods," or whose methods are not applied "reliably to the facts of the case."  *Id.*  Indeed, "*any* step that renders the analysis

5

unreliable . . . renders the expert's testimony inadmissible. ***This is true whether the step completely changes a reliable methodology or merely misapplies that methodology***." Fed. R. Evid. 702 advisory committee's note (2000) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)) (emphasis and omission in original).

This threshold admissibility inquiry that Plaintiffs must satisfy is distinct from the role of cross-examination. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky ***but admissible*** evidence. . . . These conventional devices . . . are the appropriate safeguards ***where*** the basis of scientific testimony ***meets the standards*** of Rule 702." *Daubert*, 509 U.S. at 596 (emphasis added).

Even if Mr. Puderer's testimony could somehow survive this Court's threshold scrutiny under Rule 702 (which it cannot), then it would be subject to further review and preclusion under Rule 403. *See, e.g.*, *id.* at 595. "[E]xpert evidence can be both powerful and quite misleading. . . . Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Id.* To this end, an expert opinion's "lack of reliable support may render it more prejudicial than probative, making it inadmissible under [Rule] 403." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). As Judge Weinstein has noted, "[a] false aura of scientific infallibility, coupled with low probative value, increases resistance to admitting evidence since it multiplies the hazards of misleading a jury." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1223, 1256 (E.D.N.Y. 1985), *aff'd*, 818 F.2d 187 (2d Cir. 1987). Those risks are magnified here, where Mr. Puderer offers subjective and arbitrary opinions in the absence of a valid and reliable method for reaching his opinions.

B.      **Mr. Puderer's Vague, Conclusory, and Deficient Report Must Be Stricken**

Mr. Puderer's barebones and conclusory one-page, hand-written report woefully fails to comply with the requirements of Federal Rule of Civil Procedure 26(a)(2)(B). Rule 26(a)(2)(B) governs the form and content of expert reports, and specifies that the reports "***must*** contain: (i) a ***complete*** statement of ***all*** opinions the witness will express and the ***basis*** and ***reasons*** for them . . . ." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). This provision is designed to preclude "sketchy and vague" expert opinions, *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996), and to ensure that expert reports are "written in a manner that reflects the testimony to be given by the witness." Fed. R. Civ. P. 26 advisory committee notes to 1993 amendments.

A Rule 26 expert report must be "detailed and complete" and "a primary goal of Rule 26(a)(2) [is] 'to shorten or decrease the need for expert depositions.'" *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642-43 (7th Cir. 2008) (*quoting Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998)); *see* Fed. R. Civ. P. 26 advisory committee notes to 1993 amendments (same). Indeed, "the purpose of Rule 26(a)(2) is to provide notice to opposing counsel – before the deposition – as to what the expert witness will testify," the "basis and reasons" for the expert's opinions, and "'how' and 'why' the expert reached a particular result." *Ciomber*, 527 F.3d at 641-42 (citations omitted).

Here, Mr. Puderer's report was not detailed or complete. Rather, a "sketchy and vague" "initial draft estimate", which wholly fails to describe in any meaningful manner the basis and reasons for the items that lie at the heart of Mr. Puderer's opinions, is all that Plaintiffs proffer. Without any explanation, amplification, or discussion, Mr. Puderer opines that "this property being 936 sf. would cost a minimum of $93,600.00 to rebuild." *See* Ex. A. Mr. Puderer bases his opinion on his unsupported conclusion that the cost to rebuild the damaged home is $100 per square feet. *See id.* Mr. Puderer offers absolutely no explanation about where he obtained this figure or the basis of his opinion. Further, he fails to specify whether he has seen photos or plans of the house in order to determine the square footage

7

of the house or the materials that are necessary to rebuild the house. Indeed, neither Plaintiffs nor Mr. Puderer have produced any supporting documentation that permits State Farm or anyone else to understand what specifically will be rebuilt or to determine whether the costs are reliable, necessary, or reasonable. As if those deficiencies were not troubling enough, Mr. Puderer also fails to specify how much of his total repair estimate is for damages caused by wind, if any, as opposed to damages caused by flood.

In short, Mr. Puderer's report is devoid of any meaningful data, analysis, or explanation. As is oft-stated, "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid-State Fertilizer Co. v. Exch. Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989). Rather than furnishing a "'detailed and complete'" report as Rule 26 requires, *Sierra Club*, 73 F.3d at 571, Mr. Puderer offers a vague and conclusory report, leaving State Farm, the Court, and the jury to guess what methodology, if any, was used. *Cf. Am. & Foreign Ins. Co. v. Gen. Elec. Co.*, 45 F.3d 135, 136-37, 139 (6th Cir. 1995) (affirming exclusion of expert testimony under Federal Rule of Evidence 702 where expert "had not established any protocol," "had taken no notes," and "had discarded the 'raw data'"). Because Plaintiffs failed to comply with the requirements of Rule 26(a)(2)(B), they are "not allowed to use that information or witness." Fed. R Civ. P. 37(c)(1). This result is generally "automatic and mandatory" unless the failure is either justified or harmless. *Salgado*, 150 F.3d at 742; *accord Williams v. Daimler Chrysler Corp.*, 2008 WL 4449558, at *5 (N.D. Miss. July 22, 2008) (striking expert report under Rule 37(c)(1) and quoting *Salgado*).

Courts in the Fifth Circuit apply a four-factor test when considering whether to exclude expert evidence for a party's failure to comply with Rule 26. The four factors are: (1) the explanation, if any, for the party's failure to comply; (2) the importance of the proposed evidence; (3) the potential prejudice to the opposing party of allowing the proposed evidence; and (4) the availability of a continuance to cure such prejudice. *See, e.g.*, *Campbell v. Keystone*, 138 F.3d 996, 1000 (5th Cir. 1998) (reversing district

court for allowing expert to testify); *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996) (affirming district court's striking of expert testimony); *Sierra Club*, 73 F.3d at 572-73 (same); *Geiserman v. MacDonald*, 893 F.2d 787, 791-92 (5th Cir. 1990) (same).

In this case, these factors weigh heavily in favor of excluding Mr. Puderer from trial. <u>First</u>, Plaintiffs have provided no explanation for their failure to abide by the Federal Rules of Civil Procedure and provide the disclosures required by Rule 26(a)(2)(B). <u>Second</u>, Mr. Puderer's testimony is not important because, as explained above, under the terms of the subject homeowners policy, his opinions are irrelevant. <u>Third</u>, State Farm has been substantially prejudiced by Plaintiffs' failure to submit compliant Rule 26 expert disclosures in a timely fashion. For example, State Farm must now prepare for the trial of this matter without the disclosures required by Rule 26, which are designed to avoid forcing a party to go to trial, or depose an expert, with only a "sketchy and vague" understanding of that witness's opinions and the bases for them. *Sierra Club*, 73 F.3d at 571 (*quoting* Fed. R. Civ. P. 26 advisory committee notes to 1993 amendments). Rule 26(a)(2)(B)'s reporting requirements exist precisely to eliminate prejudice from surprise and to conserve time and resources. *See Ciomber*, 527 F.3d at 643. Here, those goals were frustrated when Plaintiffs submitted a report from Mr. Puderer that woefully failed to adequately identify the basis, the reasons, the methods, and how and why he reached his opinions. Further, State Farm would be prejudiced by incurring additional costs in conducting further discovery and motion practice in the event Plaintiffs are allowed another bite at the proverbial apple. State Farm's experts would be required to review, critique, and otherwise respond to the additional information anew and State Farm would have no real choice but to take Mr. Puderer's deposition and to engage in further motion practice before this Court. <u>Fourth</u>, "a continuance would not deter future dilatory behavior," *Betzel v. State Farm Lloyds*, 480 F.3d 704, 709 (5th Cir. 2007), but rather it would "reward" it and would cause State Farm "to incur more costs." *St. John v. Regis Corp.*,

2007 WL 1238413, at *4 (S.D. Tex. Apr. 25, 2007). Nor would it "serve to enforce" the Federal Rules. *Betzel*, 480 F.3d at 709. Thus, a continuance should not be allowed in this case.

To be sure, "[t]he litigation process does not include 'a dress rehearsal or practice run' for the parties" and this Court is "not required to give [Plaintiffs] a 'do over'" due to "the failure of [their] proposed experts" to produce proper expert disclosures. *Winters v. Fru-Con Inc.*, 498 F.3d 734, 743 (7th Cir. 2007) (citations omitted). As the Supreme Court has pointedly noted, "[i]t is implausible to suggest, post-*Daubert*, that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail." *Weisgram*, 528 U.S. at 455. Here, Plaintiffs have failed to meet the familiar standards governing expert disclosures. Thus, Mr. Puderer's deficient report should be stricken.

### C.  Mr. Puderer's Opinions and Estimate Are Unreliable

"It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000). Indeed, a core rule of evidence is that "speculation is unreliable . . . and is inadmissible." *Dunn v. Sandoz Pharm. Corp.*, 275 F. Supp. 2d 672, 684 (M.D.N.C. 2003). "The courtroom is not the place for scientific guesswork, even of the inspired sort." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996). Moreover, "[a] liability expert is only helpful to the fact finder if he is able to establish such an element of the claim through visual inspection, independent research, testing, and knowledge," *Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999), and his "background information" must not be "so sadly lacking as to be mere guesswork." *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996). "Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006). To be sure, "the existence of sufficient facts and a reliable methodology is in all instances mandatory. '[W]ithout more than

credentials and a subjective opinion, an expert's testimony that "it is so" is not admissible.'" *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (quoting *Viterbo*, 826 F.2d at 424).

Here, the reliability of Mr. Puderer's opinions is questionable because, as an initial matter, his estimate is designated as an "initial draft estimate" and only for square footage purposes, not as a proposal. *See* Ex. A. Furthermore, as discussed in more detail above, *see* supra Part II.B, Mr. Puderer provides absolutely no basis for his opinions. Mr. Puderer's description of the property is exceedingly cursory and there is no indication that he actually understood what the property was like pre-Katrina. In fact, Mr. Puderer completely fails to specify whether he examined photographs or plans of the house in order to prepare his "initial draft estimate." Interestingly, Mr. Puderer's discussion of the factors that may affect his "initial draft estimate," is longer than his description of the damaged property or of how he derived his price. Further, although Mr. Puderer lists factors that may affect the overall price to rebuild, he does not establish whether any of these factors would be applicable to this property, suggesting – as does the label "initial draft estimate" – that his opinions are uncertain and indefinite.

In sum, Mr. Puderer's estimate and opinions are unsupported by sufficient facts and amount to unreliable speculation. There is no discernable way to determine how he derived at his cost estimate and whether the numbers he provided are reliable and reasonable. Mr. Puderer's unsupported, conclusory assertion that it will cost $93,600 to rebuild the property amounts to *ipse dixit*. Therefore, his opinions fail to meet the fundamental requirements for expert testimony, and Plaintiffs cannot meet their burden to show it is admissible.

## IV.    CONCLUSION

For the foregoing reasons, State Farm respectfully requests that this Court grant State Farm's motion to strike the report and exclude the testimony of Plaintiffs' expert witness, Harold Puderer, Jr., in its entirety.

DATED: April 16, 2010.

                Respectfully submitted,

                /s/ *James H. Heidelberg*

                JAMES H. HEIDELBERG, MSB # 2212
                HEIDELBERG, STEINBERGER, COLMER & BURROW, P.A.
                Attorneys at Law
                711 Delmas Avenue
                Pascagoula, MS 39567-1407
                (228) 762-8021
                *Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I, **JAMES H. HEIDELBERG**, one of the attorneys for the Defendant, **STATE FARM FIRE & CASUALTY COMPANY**, do hereby certify that I have on this date electronically filed the foregoing document with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record.

DATED:  April 16, 2010.

/s/ James H. Heidelberg
JAMES H. HEIDELBERG, MSB # 2212
HEIDELBERG, STEINBERGER, COLMER
& BURROW, P.A.
Attorneys at Law
711 Delmas Avenue
Pascagoula, MS 39567-1407
(228) 762-8021
*Attorneys for Defendant*