IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SHERRY C. TARANTO, *et al.*                                   PLAINTIFFS

VERSUS                               CIVIL ACTION NO. 1:08cv1356-LG-RHW

STATE FARM FIRE AND CASUALTY INSURANCE                        DEFENDANT

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**Note:**
Plaintiffs are addressing Defendant's Motion for Partial Summary Judgment as to Punitive Damages, Extra-contractual Damages, and Attorneys' Fees by separate responsive pleadings.

COMES NOW, the Plaintiff, Sherry C, Taranto, by and through undersigned counsel, and files this, her *Memorandum in Support of Plaintiff's Response to Defendant's Motion for Partial Summary Judgment* and would state as follows:

### I. PRELIMINARY STATEMENT.

This case concerns the bad faith denial of claims for insurance benefits for the Plaintiffs by Defendant State Farm Fire and Casualty Company.[1] This case arises from the total destruction of the Taranto and Bracamontes (hereinafter "Taranto") family summer home at 610 Fell Street in Waveland, Mississippi as a result of Hurricane Katrina, and their personal property therein.

Plaintiffs have brought suit to recover for the losses they suffered under the above referenced homeowner's policy. Defendant State Farm Fire and Casualty Insurance (hereinafter "Defendant State Farm") filed its Motion for Partial Summary Judgment alleging that Plaintiffs Sherry C. Taranto, Kay C. Sabadie, Kim C. Dassey, Tab J. Coleman, William S. Coleman Jr., Dean J. Coleman, and Tara C. Brignac (hereinafter "Coleman Plaintiffs") are not covered under the insurance policy. Defendant State Farm also alleges that Coleman Plaintiffs can not recover for their personal property that was in the vacation home because said contract only provides

coverage for Plaintiff Robert Bracamotes (hereinafter "Plaintiff Bracamotes"), and his relatives that reside with him. Defendant State Farm further alleges that Coleman Plaintiffs should be barred from maintaining a punitive damages claim and claims for extra-contractual damages and attorneys' fees.

The fact that Coleman Plaintiffs suffered losses to their personal property is not in dispute. However, Coleman Plaintiffs will show that although they are not signatories to the policy, they are covered under the policy. Plaintiffs will show that since the home was a vacation home, the Plaintiffs should be considered as relatives who reside at said home, as well as covered insureds. In the alternative, Coleman Plaintiffs will show that they are legal heirs of Fay Coleman (Gail Bracamotes' sister), who died intestate in 2002. *In re Coleman*, No. C2301-06-593-(3), Order Establishing Heirs at Law at 1-2 attached hereto as Exhibit "A" (Miss. Chancery Ct. Dec. 10, 2007); see Hancock County Property Records at 5-9. Since Fay Coleman owned a one-half interest in the property, Plaintiffs (as Fay Coleman's nieces and nephews) acquired the one-half interest in the property at the time of Fay Coleman's death in 2002, even though the title was not officially recorded until 2007.

Coleman Plaintiffs will further show that as owners of one-half interest in the property, they are entitled to all rights that Fay Coleman had under the homeowner's policy. Similarly, Plaintiffs will show that the policy incorrectly listed Fay Coleman as having a mortgagee's interest in the policy, but the home was paid off well in advance of the policy being issued, and the property carried no mortgage. Therefore, due to the clerical errors made during the drafting of the policy, Fay Coleman was actually an insured with Plaintiff Bracamotes.

## II. FACTUAL BACKGROUND.

Prior to Fay Coleman's death in 2002, Fay Coleman owned a one-half interest in the house, and Plaintiff Bracamotes owned the remaining one-half interest. At the time of Fay

---

[1] The Homeowners insurance policy number is "24 00 622D 7." The policy is dated June 10, 2005.

Coleman's death her one-half interest immediately passed to her nieces and nephews. At the time of Hurricane Katrina, the home was covered by two insurance policies, a homeowners policy and a flood policy. Plaintiffs Robert and Gail Bracamotes (husband and wife) were named insureds under the flood policy, and Defendant State Farm paid $50,000 (the policy limits) under the flood policy.[2] However, Defendant State Farm denied benefits under the homeowners policy.

### III. ARGUMENTS AND AUTHORITIES.

Fed. R. Civ. P. 56(c) provided that summary judgment is only granted when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. In the case at bar, Plaintiffs have raised several questions of fact that should be determined by the trier of fact, and would state as follows:

**A. Clerical Errors and Ambiguity in the Homeowners Policy.**

There is a genuine issue as to the material fact that Fay Coleman was incorrectly identified as a mortgagee instead of an insured. Under Mississippi Law, a mortgagee has standing to bring a 3rd party claim against the insurer, but is "only entitled to receive the amount due on the mortgage." *Necaise v. Oak Tree Sav. Bank, SSB*, 645 So. 2d 1315 (Miss. 1994). However, in the case at bar, there was no mortgage owed on the home. It appears from the policy that naming Fay Coleman as a mortgagee was likely a clerical error because the box at the bottom of the document where the insured is listed is not large enough to hold more than one name, and therefore other insured parties would be continued on the next page of the document. *See* Homeowners Policy at Pages 2 and 3, attached hereto as Exhibit "B". This is further evidenced by the confusing language on the next page of the policy stating:

> "**CONTINUED FROM FRONT**
>
> **Mortgagee:** Fay Coleman
> Loan No: N/A-Provided on front"

---

[2] *See* Flood Claim File Excerpt at 93.

3

However, there is nothing provided "on front" of the policy related to this entry. *Id.* Common sense dictates that Fay Coleman was not a mortgagee since there was no mortgage on the property. Please see pages 2, 10 and 12 of the Fire Claim Service Record attached hereto as Exhibit "C". The most likely interpretation is that she was an insured, and a simple clerical error was made by Defendant State Farms' agent drafting the policy. This is important because all rights Fay Coleman had under the policy would have passed to her nieces and nephews, as her legal heirs. At a minimum, this clause of the policy is confusing and ambiguous.

In *Amer. Guarantee & Liability Ins. Co.*, 129 F.3d 802, 811-812 (5th Cir.1997) (citing *Ins. Co. of N. Amer. v. Deposit Guar. Nat'l Bank*, 258 So.2d 798, 800 (Miss.1972)) the Fifth Circuit Court held, "[h]owever, when the clauses are read together, the clauses conflict. A conflict within the whole meets the very definition of ambiguity. An ambiguity is defined as a susceptibility to two reasonable interpretations."

A widely-quoted judicial definition of "ambiguous" is as follows:

> An "ambiguous" word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.[3]

Any ambiguity or clerical errors contained with the policy should be found in favor of the Plaintiffs.

---

[3] *Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987) (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y.1968)). A contract is ambiguous if it contains conflicting clauses when the contract is read as a whole. This contract is capable of more than one reasonable interpretation as to when and how the contract can be terminated. This contract fails to provide clear direction as to which termination clause applies, without consideration of extrinsic evidence. Once a contract is found to be ambiguous, resolution of any uncertainties will be against the **drafter** of the contract. *See*

### B. Coleman Plaintiffs Should be Considered Insureds Under the Terms of the Policy.

The homeowners policy contains a "Definitions" section and defines "insured in the following manner:

> 4. "**insured**" means you and, if residents of your household:
>    a. your relatives, and
>    b. any other person under the age of 21 who is in the care of a person described above.

Exhibit "D" at page 13.

It is without dispute that Plaintiffs are relatives of Fay Coleman and relatives of Plaintiff Bracamotes. The genuine issue as to the material fact presented here is whether the Plaintiffs are "residents." Generally, the plain and ordinary meaning of residents would be individuals living at the insured's home. Under the facts and circumstances here present, the homeowners policy was issued to cover a summer vacation home. Due to the home being used as a vacation home, the term resident should be construed more loosely to cover all residents of the home.

Defendant cites *Mercer v. Progressive Gulf Ins. Co.*, 885 So. 2d 61, 67 (Miss. 2004) wherein the Court held that the daughter was not a "resident" of her father's household under an uninsured motorist policy. However, the case at bar is distinguishable because in *Mercer*, the Court held that the daughter was not considered a resident of her fathers household because she "did not intend to live with her father." *Id.* at 66-67. Here, none of the Plaintiffs, including Plaintiff Bracamotes, lived at the summer home as their primary residence. Plaintiff Taranto stated in her deposition "It was a retreat home that we – yes, we gathered at, uh-huh." Taranto Depo. at page 25:15 attached hereto as Exhibit "E". Also, there is no evidence that shows that the Plaintiffs had any intention to stop residing at the vacation home in the future, as was relevant in *Mercer*.

---

*Pursue Energy Corp. v. Perkins*, 558 So.2d 349, 352 (Miss.1990). (emphasis added).

In certain situations, individuals can reside at more than one location at the same time. In *Aetna Cas. & Sur. Co. v. Williams*, 623 So.2d 1005, 1006 (Miss.1993) the Supreme Court of Mississippi held that the decedent son, a nineteen-year-old un-emancipated minor child of divorced parents, could be considered a "resident" of both parents' homes for purposes of the Uninsured Motorist Act. The Court examined the facts, and gave much weight to where the son kept his personal belongings. The Court held "[t]he son's mailing address at the time of the accident was at the home of his custodial parent, his mother, but he kept personal belongings and maintained a bedroom at the homes of both parents." *Id.* Similarly, the Plaintiffs kept their personal belonging at the vacation home, and were resided there "every weekend during the summer, sometimes every other weekend." Taranto Depo. at page 25:2-15 (Exh. "E").

In *Aetna*, 623 So.2d 1005, 1000 (Miss.1993) the Supreme Court of Mississippi held "we concluded that a broad reading of the term "resident" was appropriate and in keeping with the intent of the legislature, which in defining an "insured," chose the more inclusive term, "residence" as opposed to "domicile." A person may have only one domicile at a time. However, we have held that a person may have multiple residences simultaneously. *Id.* The same reasoning applied in *Aetna* would hold true when considering the use of a vacation home for interpreting the term "resident" in the homeowners policy at issue here. In *McLeod v. Allstate Ins. Co.*, 789 So. 2d 806, 810 (Miss. 2001) the Supreme Court of Mississippi held "residency is a more flexible concept, and permanency is not a requirement for residency." As in *McLeod*, the case at bar present issues that are subject to more than one interpretation, and therefore preclude summary judgment.

Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party. *Leach v. Tingle*, 586 So.2d 799, 801-02 (Miss.1991) (citing *Stampley v. Gilbert*, 332 So.2d 61, 63

(Miss.1976)). Specifically, as to insurance contracts, where there is doubt as to the meaning of the contract, it will be "universally construed most strongly against the insurer, and in favor of the insured and a finding of coverage." *Universal Underwriters Ins. Co. v. Ford*, 734 So.2d 173, 176-77 (Miss.1999).[4] Accordingly, Defendant's motion should be denied.

### IV. CONCLUSION.

For the forgoing reasons, this Court should deny Defendant State Farm's *Motion for Partial Summary Judgment* because Plaintiffs have shown several genuine issue of material fact. Such issues as are:

a. Plaintiffs standing as "residents" are in controversy under the ambiguous language of the policy.

b. Plaintiffs standing as "insured" by their prior one-half ownership of the property through intestate succession.

c. Whether the policy contains clerical errors concerning the identification of a mortgagee, when no mortgage existed.

For the above reasons, Plaintiffs have demonstrated a genuine issue of material fact relevant to their status as residents and insureds under said insurance policy. Accordingly, summary judgment is precluded under Fed. R. Civ. P. 56(c) because such genuine issues of material fact exist.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs pray that Defendant's *Motion for Partial Summary Judgment* be denied.

---

[4] See also *Nationwide Mut. Ins. Co. v. Garriga*, 636 So.2d 658, 662 (Miss.1994); *American Hardware Mut. Ins. Co. v. Union Gas Co.*, 238 Miss. 289, 294-95, 118 So.2d 334, 336 (1960); *Griffin v. Maryland Cas. Co.*, 213 Miss. 624, 632, 57 So.2d 486, 487 (1952); *Mutual Ben. Health & Acc. Ass'n v. Blaylock*, 163 Miss. 567, 573, 143 So. 406, 407 (1932) ("It is a familiar rule of construction of contracts, and especially insurance contracts, that they are construed most strongly against the party drafting the contract, and most favorably to the policyholder.").

Respectfully Submitted,

SHERRY C. TARANTO, ROBERT C. BRACAMONTES, JR., GAIL L. BRACAMONTES, KAY C. SABADIS, KIM C. DASSEY, TAB J. COLEMAN, WILLIAM S. COLEMAN, JR., TARA C. BRIGNAC AND DEAN J. COLEMAN, Plaintiffs


By: /s/ Darryl M. Gibbs
     Darryl M. Gibbs


ATTORNEYS FOR PLAINTIFF:

Darryl M. Gibbs MSB (#100232)
Chhabra & Gibbs, P.A.
120 North Congress Street, Suite 200
Jackson, Mississippi 39201
Telephone: (601) 914-1512
Facsimile: (601) 914-1511
dgibbs@cglawms.com

John H. Denenea, Jr. (#18861)
SHEARMAN - DENENEA, L.L.C.
*Pro Hac Vice*
4240 Canal Street
New Orleans, LA 70119
Telephone: (504) 304-4582
Telecopier: (504) 304-4587

## CERTIFICATE OF SERVICE

I, Darryl M. Gibbs, do hereby certify that I have this day electronically filed the foregoing *Memorandum in Support of Plaintiff's Response to Defendant's Motion for Partial Summary Judgment*, with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

James H. Heidelberg, Esq.
Jessica M Dupont, Esq.
Heidelberg, Steinberger,
Colmer & Burrow, P.A.
Post Office Box 1407
Pascagoula, Mississippi 39568-1407
ATTORNEY FOR DEFENDANT, STATE FARM FIRE AND CASUALTY

THIS the 10th day of May, 2010.

/s/ Darryl M. Gibbs
Darryl M. Gibbs